**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES FOR THE USE OF COLORADO CUSTOM ROCK CORPORATION,<br><br>             Plaintiff,<br><br>    v.<br><br>G&C FAB-CON, LLC and EVEREST REINSURANCE CO.,<br><br>             Defendants. | Civil Action No. 20-02968 (GC) (RLS)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on three post-trial motions: Defendant G&C Fab-Con, LLC's Motion for Attorney's Fees and Costs; Plaintiff United States for the Use of Colorado Custom Rock Corporation's Motion to Amend/Correct Judgment to Include Pre-Judgment and Post-Judgment Interest; and Defendants G&C Fab-Con, LLC and Everest Reinsurance Company's Motion for Judgment as a Matter of Law, or in the Alternative, to Alter and/or Amend the Judgment, or in the Alternative, for a New Trial. (ECF Nos. 161, 162, 164.) The parties briefed the motions. (ECF Nos. 166-68, 175-77, 182.) The Court carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Court **DENIES** Defendants' motion for judgment as a matter of law/to alter or amend the judgment/for a new trial, **DENIES** Defendant G&C's motion for attorney's fees and costs, and **GRANTS** in

part and **DENIES** in part Plaintiff's motion for pre-judgment and post-judgment interest.[1]

## I.    **BACKGROUND**[2]

This case involves a federal construction project known as the "Pike's Peak National Cemetery Project," located in Colorado Springs, Colorado.  The project called for the construction of a United States Department of Veteran Affairs (the "VA") national cemetery.  The VA entered into a contract with Defendant G&C Fab-Con, LLC, the general contractor on the project.  G&C then entered into a subcontract with Plaintiff Colorado Custom Rock Corp., for Colorado Custom to perform masonry work on the project, including for two buildings: the project's administration building and the maintenance building.  G&C posted a performance bond for the project that was provided by Defendant Everest Reinsurance Co.

During the construction of the two buildings, a dispute arose as to the quality of the masonry work that Colorado Custom was performing.  Plaintiff took the position that it performed its masonry work in accordance with the subcontract (or timely corrected any faulty work) and G&C breached the subcontract by improperly terminating Colorado Custom and failing to then pay for its labor and materials.  Defendants' position was that Colorado Custom's work was defective due to plumbness[3] issues and Colorado Custom was properly terminated in accordance

---

[1]    On September 27, 2024, Defendants also filed an emergent motion under Rule 62(b) "for an order staying execution of the judgment entered on March 13, 2024 . . . pending disposition of the post-trial motions" in light of Plaintiff's September 26, 2024 demand for payment within seven days.  (*See* ECF No. 184 at 3; ECF No. 184-2.)  Because a First Amended Judgment will accompany this Opinion and enforcement of an Amended Judgment is automatically stayed for 30 days under Rule 62(a), the Court **DENIES** as moot Defendants' motion for a stay of execution of the Court's March 13, 2024 Judgment.  *See* Rule 62(a) (". . . [E]xecution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.").

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]    Plumbness refers to the quality or state of being plumb or vertical.

with the subcontract for defaulting on its obligations thereunder.  G&C also claimed that it was compelled to retain other subcontractors to perform extensive corrective work, resulting in costs far exceeding what was otherwise due to Colorado Custom.

Plaintiff Colorado Custom sued and Defendant G&C countersued, both parties asserting claims for breach of the subcontract.[4]  (ECF No. 1 at 3-4; ECF No. 22 at 9-10.)  A six-day jury trial was held in late-February and early-March 2024, which included testimony from ten witnesses (both fact and expert) and the admission of over eighty exhibits.  (ECF Nos. 169-174.)  The jury rendered a unanimous verdict on March 7, 2024, finding that G&C breached the subcontract and awarding Colorado Custom $589,000.00 in damages on its breach-of-contract claim.  (ECF No. 155.)  The jury also found that Colorado Custom breached the subcontract but awarded G&C just $1.00 in nominal damages on its breach-of-contract counterclaim.  (*Id.*)  On March 13, 2024, the Court entered a Judgment Order consistent with the jury's verdict and directing that any post-trial motions be filed by the parties within thirty days.  (ECF No. 160.)

On March 27, 2024, Defendant G&C moved for the Court to award it attorney's fees and costs under the subcontract.  (ECF No. 161.)  On April 10, 2024, Plaintiff Colorado Custom moved to amend/correct the judgment to include pre-judgment and post-judgment interest.  (ECF No. 162.)  Defendants G&C and Everest also moved on April 10 for judgment as a matter of law, to alter/amend the judgment, or for a new trial.  (ECF No. 164.)  The parties briefed the motions in late-April and early-May 2024.  (ECF Nos. 166-68, 175-77, 182.)

## II.    DISCUSSION

### A.  DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants' motion for judgment as a matter of law, to alter or amend the judgment, or for

---

[4]    Plaintiff also sued Everest under the Miller Act, 40 U.S.C. § 3131, *et seq.*, for payment on the payment bond that G&C posted.  (ECF No. 1 at 4-5.)

a new trial centers on the contention that Plaintiff Colorado Custom "failed to present . . . competent evidence upon which the jury could reasonably render a verdict on [Plaintiff's] claim for damages." (ECF No. 164-1 at 9.)  Defendants argue that Plaintiff did not provide documentary evidence for $398,268.41 sought at trial, consisting of $132,190.00 in unpaid "stored materials" in Plaintiff's March and April 2019 payment applications and $266,078.41 for Plaintiff's unbilled work (labor and stored materials) on the administration building.  (*Id.* at 8-9.)  Defendants further argue that the testimony proffered by Todd Robertson, Plaintiff's Chief Executive Officer and owner, as to damages was "vague, conclusory and speculative," and insufficient to support the damages claimed.  (*Id.* at 9-14.)

In opposition, Plaintiff argues that a party does not need to "prove damages with documentary evidence," and even so, the trial "record contains 'documentary evidence' to support both the fact of damages and the amount."  (ECF No. 168 at 25-26.)  Plaintiff also notes that the "jury did not award [Colorado Custom] all of the damages it sought, but . . . reduced that amount by $102,758.33.  Although the jury did not itemize its damages calculation on the verdict sheet, the jury clearly made a determination as to the weight and credibility to assign Mr. Robertson's testimony on damages that were not supported by documentary evidence."  (*Id.* at 28.)  And because the weight of the evidence does not cut against the verdict, Plaintiff argues that Defendants' motions should be denied.  (*Id.*)

"After the presentation of evidence, but before the case is submitted to the jury, Rule 50(a) authorizes either party to move for judgment as a matter of law.  This standard largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record."  *Dupree v. Younger*, 598 U.S. 729, 731-32 (2023).  "If the district court does not grant the [Rule 50(a)] motion, then the jury will render a verdict.  After the verdict, Rule 50(b) permits a disappointed party to file a renewed

motion for judgment as a matter of law (which may also include a request for a new trial under Rule 59)." *Id.* at 732.

"The standard for considering a renewed motion per Rule 50(b) is the same as that for a Rule 50(a) motion and, without weighing evidence or witness credibility, a court should grant a renewed motion only 'if the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Ivanovs v. Bayada Home Health Care, Inc.*, 674 F. Supp. 3d 115, 119 (D.N.J. 2023) (quoting *Baran v. ASRC Fed., Mission Sols.*, 401 F. Supp. 3d 471, 479-80 (D.N.J. 2019), *aff'd sub nom. Baran v. ASRC/MSE*, 815 F. App'x 633 (3d Cir. 2020)); *see also Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 218 n.8 (3d Cir. 2021) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." (quoting *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 503 (3d Cir. 2005))).

Rule 59(e) permits a party to move to alter or amend a judgment. Fed. R. Civ. P. 59(e). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Am. Nat'l Prop. & Cas. Co. v. Felix*, 399 F. Supp. 3d 324, 339 (W.D. Pa. 2019) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Such motions "are the proper vehicle to correct a jury verdict that is manifest error or shocks the judicial conscience." *Id.*; *see also Wilson v. Haas*, Civ. No. 11-7001, 2016 WL 4154915, at *2 (D.N.J. Aug. 4, 2016) ("The purpose of a motion under Rule 59 is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

And Rule 59(a)(1)(A) permits a party to seek, "after a jury trial, [a new trial] for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The United States Court of Appeals for the Third Circuit has underscored that a district court should overturn a jury verdict "only when 'the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand.'" *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)). The "district court's power to grant a new trial is limited 'to ensure that [it] does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury.'" *Id.* (quoting *Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 201 (3d Cir. 1996)).

Here, after Plaintiff presented its case-in-chief at trial, Defendants moved under Rule 50(a) for judgment as a matter of law on damages. (ECF No. 143.) Defendants argued that Colorado Custom had "failed to present any competent evidence upon which the jury could render a verdict on [Colorado Custom's] claim for damages pertaining to the $266,078.41 for the administrative building and the stored materials contained in the March and April 2019 payment applications." (ECF No. 143-1 at 4.) Defendants wrote that Mr. Robertson "lack[ed] sufficient knowledge of the alleged damages" and that there was "no other competent evidence to support these claims of damages." (*Id.* at 7-9.) Defendants asked the Court to limit Plaintiff's damages to $230,602.80, which represented Colorado Custom's "alleged retainage, as well as its outstanding billings in the March and April 2019 payment applications, less stored materials." (*Id.* at 9 n.1.)

In a March 7, 2024 bench opinion issued before jury deliberations, the Court denied Defendants' motion. The Court explained:

> With respect to the unbilled amounts sought by plaintiff[] in this case, Mr. Robertson testified that because [Colorado Custom] was terminated four days prior to the due date to submit another pay app to G&C, [Colorado Custom] had not yet billed G&C for work on the administration building that CCR had started in March 2019.

6

Mr. Robertson testified that this additional unbilled work performed and stored materials pertained to the administration building.

When asked if the amount for this work and stored materials on the administration building was documented anywhere, Mr. Robertson testified that it was documented with stored materials and vendor invoices, including an invoice from Modern Masonry.  No vendor invoices or other exhibits were admitted, however, to support Mr. Robertson's testimony on this point.

In seeking judgment on a matter of law on the issue of damages, the defendants argue that while oral testimony of damages may be sufficient in some circumstances, the Court should find it insufficient here because Mr. Robertson's testimony showed that he lacked sufficient knowledge of the alleged damages.

Defendants point to testimony where Mr. Robertson could not confirm what specifically was included in certain payment applications that had been submitted to G&C for stored materials in March and April of 2019, and to the absence of documentary support for the purported labor costs that CCR incurred on the administration building.

In response, plaintiff argues that Mr. Robertson's testimony and the exhibits that were admitted are sufficient to withstand a directed verdict on damages.  Although the specific vendor invoices, photos and bank statements used to verify the amounts were not admitted into evidence at trial, plaintiff contends that Mr. Robertson's testimony admitted without objections shows that he had a basis for the numbers he quoted, and that the testimony regarding the amounts of materials and work provided, paired with the journal entries, the daily logs and the pay applications, present enough evidence from which a reasonable jury can properly weigh and evaluate the merits of [Colorado Custom's] claim and conclude what may be owed.

Having carefully reviewed the parties' submissions, as well as having heard the testimony and the exhibits admitted at trial, the Court denies defendant's request that judgment as a matter of law be entered and plaintiff's damages amount be limited to no more than $230,602.80.

The Court does not find that the evidence in the form of Mr. Robertson's oral testimony and the exhibits referenced by plaintiff is so insufficient as to justify taking this issue from the jury at this stage.

> Mr. Robertson, as principal and co-owner of [Colorado Custom], who started the company in 1992, testified that the various amounts that he asserts [Colorado Custom] is claiming are based on receipts, vendor invoices and pay apps submitted, not simply conjecture or speculation.
>
> . . .
>
> And it is ultimately a question for the jurors as fact finders in this case as to what weight and credibility, if any, to assign to Mr. Robertson's testimony on damages that is not supported by documentary evidence. And defendants are welcome to address in their closing arguments the deficiencies that they believe exist on plaintiff's case, including on the issue of damages.
>
> [(ECF No. 174 at 5-8.)]

Defendants focus their post-trial challenge on the sufficiency of evidence for the unbilled labor and stored materials on the administration building (totaling $266,078.41) as well as the amounts Plaintiff billed for stored materials in the March 2019 and April 2019 pay applications (totaling $132,190.00). Defendants ask the Court to reduce the jury's verdict by these amounts or, in the alternative, grant a new trial. (ECF No. 164-1 at 31.)

Under Colorado law,[5] "monetary reparation cannot be based upon mere speculation, but on the other hand such need not be proven with mathematical certainty. It is sufficient if the plaintiff establishes by a preponderance of the evidence that he has in fact suffered damage or that his rights have been infringed and that his evidence in this regard provides a reasonable basis for

---

[5]     Before trial, the parties agreed that Colorado law applies to the contract claims stemming from a construction project in Colorado. (*See* ECF No. 104 at 12 ("Colorado law applies to the parties' breach of contract . . . claims.").) In their briefing on the present motion, the parties cite Colorado law on damages as well. (*See* ECF No. 164-1 at 14, 21; ECF No. 168 at 24.) The Court has identified no significant difference between the laws of Colorado and New Jersey as to the sufficiency of evidence that must be offered to support a jury's damages verdict on a breach-of-contract claim, and the Court would reach the same conclusion on the present motion under either Colorado or New Jersey law. *See, e.g.*, *Phibro-Tech, Inc. v. Osmose Holdings, Inc.*, 2007 WL 1989431, at *17 (N.J. Super. Ct. Ch. Div. June 25, 2007) ("No compelling reason has been advanced to justify applying New Jersey *damages* law to New York *substantive* law. Generally, and here, damages follow the substantive law.").

a computation of the damage so sustained." *Riggs v. McMurtry*, 400 P.2d 916, 919 (Colo. 1965). Critically, "damages are not recoverable for losses beyond an amount that a plaintiff can establish with *reasonable certainty* by a preponderance of the evidence." *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993) (emphasis in original); *see also Kelly v. Berlin*, 692 A.2d 552, 558 (N.J. Super. Ct. App. Div. 1997) ("[A] plaintiff must 'prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate.' Damage awards may not be based on mere speculation." (quoting *Lane v. Oil Delivery, Inc.*, 524 A.2d 405, 409 (N.J. Super. Ct. App. Div. 1987))); Restatement (Second) of Contracts § 352 (1981) ("Damages need not be calculable with mathematical accuracy and are often at best approximate.").

At trial, Plaintiff Colorado Custom sought the following damages for breach of the subcontract and payment on the bond:

| Category of Damages Sought | Amount |
|---|---|
| Retainage for Payment Applications (May 2018-February 2019) | $81,965.59 |
| Unpaid March 2019 Pay Application | $199,218.64 (including $88,690.00 for stored materials) |
| Unpaid April 2019 Pay Application | $81,608.57 (including $43,500.00 for stored materials) |
| Unbilled Labor on Admin. Bldg. | $120,670.41 |
| Unbilled Stored Materials on Admin. Bldg. | $145,408.00 |
| **Alleged Total Unpaid:** | $628,871.21 |
| 10% Damages Provision in Subcontract | $62,887.12 |
| **Alleged Total Damages:** | $691,758.33 |

[(ECF No. 170 at 79-81, 88, 91-98; ECF No. 174 at 49-51.)]

The jury did not grant Plaintiff all of the damages sought. After deliberation, the jury reached a verdict of $589,00.00 in Plaintiff's favor—about $100,000.00 less than what was sought. Defendants do not contest that Plaintiff introduced sufficient evidence to support $230,602.80 in damages (the retainage amounts for May 2018-February 2019 plus the March and April 2019 pay applications, excluding the stored materials costs for those two months). Instead, Defendants claim that the evidence was insufficient, as a matter of law, to allow the jury to award any damages for unbilled labor and stored materials on the administration building ($266,078.41) and for stored materials in the March and April 2019 pay applications ($132,190.00).

In response, Plaintiff points to various exhibits and testimony to support its alleged damages. As to the amount for unbilled stored materials at the administration building, Plaintiff admitted a March 29, 2019 email (Exhibit 65) from Mr. Robertson to G&C Senior Project Management Cole Vetraino. (ECF No. 164-6 at 1.) In the email, Mr. Robertson writes that Plaintiff incurred costs for "unpaid stored materials" that it needed "added to March's pay app." (*Id.*) Attached to the email is a "continuation sheet" that Plaintiff represents shows that there was $42,008.00 in unpaid stored material costs for the administration building in January 2019,[6] $37,600.00 in February 2019, and $65,800.00 in March 2019, for the total amount of $145,408.00 in unbilled stored materials. (*Id.* at 4.) At trial, Mr. Robertson testified that Exhibit 65 accurately reflected his understanding of what Plaintiff was owed for unbilled stored materials on the administration building for those three months. (ECF No. 170 at 93-95.)

As to the amount for unbilled labor at the administration building, Plaintiff admitted several exhibits to show that work had been done on the administration building for which it had not

---

[6]     The $42,008.00 on the continuation sheet is not highlighted in yellow as "unpaid," but Mr. Robertson testified that was due to his own "bookkeeping error," and he testified that he could verify by receipts and pay applications that "there was not $42,008 applied in any given month toward those stored materials" he was now seeking payment for. (ECF No. 170 at 93-95.)

received payment.  For example, the February 2019 pay application (Exhibit 133) showed that the administration building's concrete masonry work was 2.31% complete at that point, and the March and April 2019 pay applications (Exhibits 63 and 89) showed that the work was then 10.45% complete.  (*Compare* ECF No. 164-4 at 53, *with* ECF No. 164-2 at 5 and ECF No. 164-3 at 5.) Plaintiff's on-site supervisor, Caleb Bauserman, testified and provided his journal (Exhibit 128) that showed that Plaintiff had continued to work on the administration building in March 2019 at G&C's direction.  (ECF No. 170 at 223-27; ECF No. 168-3 at 17.)  And the daily subcontractor reports (Exhibit 146) show that Plaintiff worked on the administration building in March and April 2019.  (ECF No. 168-4 at 102-03, 117-18, 157-58, 162-63, 167-68, 172-73, 193-94, 198-99.)

Mr. Robertson testified that this labor on the administration building had not been billed because Plaintiff was terminated four days prior to when the May 2019 pay application would have been submitted to G&C.  (ECF No. 170 at 95-96.)  Although no invoices for the unbilled labor were admitted into evidence, Mr. Robertson testified that he had confirmed the amount for labor through "an invoice from Modern Masonry, who did the work . . . showing [him] the work that ha[d] been done, which was verified by [Mr. Bauserman] in the field.  It wasn't verified by the Veterans Administration because the pay app wasn't submitted yet, but it was verified by [Mr. Bauserman], Modern Masonry, [and Mr. Robertson]."  (*Id.* at 96.)  And Plaintiff contends that the $120,670.41 unbilled amount for labor is arrived at by subtracting the $145,408.00 in documented stored material costs from the $266,078.41 that Mr. Robertson testified Colorado Custom had "not billed for the work performed and stored materials pertaining to admin."  (*Id.*)

Finally, as to the stored material costs in the March and April 2019 pay applications, Plaintiff admitted that the March 2019 pay application (Exhibit 63) and the April 2019 pay application (Exhibit 89) showed amounts in stored materials that were incurred on aspects of the project other than the administration building during those months, *i.e.*, $88,690.00 in March and

$43,500.00 in April.  (ECF No. 164-2 at 5; ECF No. 164-3 at 5.)  Mr. Robertson also testified that both pay applications were submitted but were never paid by G&C and that he had receipts for the materials billed, even though the receipts were not admitted at trial.  (ECF No. 170 at 89-92, 197-98.)

Having carefully reviewed the trial testimony, admitted exhibits, and the parties' arguments, the Court finds that Plaintiff introduced sufficient evidence from which the jury could base its damages verdict in this case.  Indeed, the evidence identified by Plaintiff establishes the fact of damages and provides a reasonable basis for the jury's verdict without resorting to mere speculation.  Accordingly, Defendants' motion to either reduce the damages verdict via Rules 50(b) or 59(e) or for a new trial via Rule 59(a)(1)(A) will be denied.

In reply on the pending motion, Defendants raise for the first time the argument that the amount Plaintiff sought in the March 2019 pay application for stored materials appears to incorporate $65,800.00 in unbilled stored materials that Plaintiff also sought for the administration building in March 2019.  (*See* ECF No. 175 at 7 n.1 ("[Colorado Custom] is . . . double dipping – seeking $65,800 for what it contends are 'unbilled stored materials for March of 2019' despite the fact that this $65,800 was also included in the $88,690 that was actually billed for March in [Colorado Custom's] March Payment Application.").)  But this issue was not raised during trial. Nor was it included in Defendants' Rule 50(a) motion for judgment as a matter of law.  (*See generally* ECF No. 143.)  Because the issue was not brought to either the jury's or the Court's attention until after the verdict was rendered, authority supports the conclusion that it cannot be properly raised in a post-trial motion for judgment as a matter of law or to alter/amend the judgment.  *See, e.g.*, *In re Prosser*, 534 F. App'x 126, 131 (3d Cir. 2013) ("'Since the post-submission motion is nothing more than a renewal of the earlier motion,' however, the party may not raise any new issue that she did not raise in her pre-verdict motion." (citation omitted)); *Cohen*

*v. Cohen*, Civ. No. 19-1219, 2022 WL 952842, at \*4 (D. Del. Mar. 30, 2022) ("Defendant never argued that Count II is time-barred when he made his motion for a judgment as a matter of law at trial, and so he cannot *renew* this argument as Rule 50(b) requires."); *Manville Sales Corp. v. Paramount Sys., Inc.*, Civ. No. 86-4157, 1989 WL 151198, at \*1 (E.D. Pa. Dec. 12, 1989) ("[F]ailure to bring grounds for a new trial to the court's attention during trial will bar amendment of judgment on those grounds after trial."); Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2805 (3d ed. June 2024) ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.").

Even if the Court accepts Defendant's argument that $65,800.00 of the $691,758.33 that Plaintiff sought was potentially "double counted," the Court also does not find that a reduction of the jury's award or a new trial is warranted under the circumstances. The jury discounted the amount awarded to Plaintiff by about $100,000.00. The verdict in this case ($589,000.00) is less than the maximum potential damages the jury could have reasonably granted based on the evidence and testimony, even excluding the $65,800.00 that Defendants claim should not have been sought.[7] Accordingly, the jury's damages verdict cannot be said to be clearly erroneous, a manifest injustice, or against the great weight of evidence. *See, e.g.*, *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989) ("In reviewing the propriety of a jury verdict, our obligation is to uphold the jury's award if there exists a reasonable basis to do so. While a district court has discretion in determining whether a jury's verdict is excessive, it is undisputed that the court *may*

---

[7]    Total unpaid amount for costs and labor would be $563,071.21 ($628,871.21 sought minus $65,800.00 allegedly double counted). With the ten percent damages provision under the subcontract, a reasonably certain calculation of Plaintiff's *maximum* total damages could have been as high as $619,378.33 ($563,071.21 increased by 10%). Thus, the verdict of $589,000.00 was less than the maximum potential damages the jury could have reasonably awarded based on the evidence and testimony, even accepting the contention that $65,800.00 was double counted.

*not* vacate or reduce the award merely because it would have granted a lesser amount of damages. For the court to disturb a jury verdict, 'the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court.'" (citation omitted)); *Blakey v. Cont'l Airlines, Inc.*, 992 F. Supp. 731, 734 (D.N.J. 1998) ("A new trial is warranted only where the verdict is grossly excessive and bears no rational connection to the evidence. . . . Therefore, a judge's belief that the jury was unduly generous is not sufficient to warrant a new trial.").

Lastly, Defendants argue that a new trial is warranted because Plaintiff's counsel showed the jury a demonstrative chart during closing arguments that detailed Plaintiff's alleged damages. Defendants argue that the chart may have misled and prejudiced the jury by giving "unwarranted credibility to the Unbilled Admin Amounts and the Stored Materials in the March and April Payment Applications." (ECF No. 164-1 at 27-28.) Defendants complain that Plaintiff's counsel did not "seek consent prior to showing this demonstrative to the jury." (*Id.* at 28.)

The Court will not grant a new trial based on the chart that Plaintiff showed during closing arguments. Notably, before the parties' opening statements, the Court specifically asked counsel if they had exchanged any demonstratives that they intended to use, and the Court emphasized that its preference was for the parties to "work together" to ensure that there were no surprises. (ECF No. 169 at 9.) And during closing arguments, counsel for Defendants never rose to object to Plaintiff's demonstrative chart or to inform the Court that the chart had not been shared prior to being shown to the jury. Indeed, the Court has identified no objection from Defendants to the demonstrative at any point until it received the current post-trial motion. And when, during deliberations, the jury sent a communication to the Court requesting a copy of the demonstratives the parties used to demonstrate their alleged damages, the Court denied the jury's request, stating to the jury (with the parties' consent) that "[t]he jurors [we]re not permitted to receive copies of

the breakdown of damages prepared by counsel, but must rely on the exhibits entered into evidence and any testimony." (ECF No. 174 at 55-59.)

Considering the above, the Court finds that "Defendants' failure to object at trial . . . [to the demonstrative chart] casts doubt on the credibility of their arguments that the information on [it] . . . was so damaging that the verdict must be overturned." *Aqua Connect, Inc. v. TeamViewer US, Inc.*, Civ. No. 18-1572, 2023 WL 6387791, at *3 n.6 (D. Del. Sept. 29, 2023). What's more, the failure of counsel to object at trial waived Defendants' right to now demand a new trial on that ground, particularly when the demonstrative was merely a summary chart and the Court clearly directed the jury that damages must be determined based on admitted exhibits and testimony, not what was shown during closing arguments. *See, e.g.*, *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 395 (3d Cir. 1999) ("As this Court has previously noted, 'a party who fails to object to errors at trial waives the right to complain about them following trial.'" (quoting *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998))); *United States v. Wilder*, 283 F. App'x 66, 69 (3d Cir. 2008) ("[D]efense counsel . . . never objected to [the chart's] demonstrative use in closing argument. . . . Because the chart provided a summary of testimony and served a strictly demonstrative purpose, and because defense counsel did not properly object to its use in closing argument, such use of the chart was not error, plain or otherwise.").

### B. DEFENDANT G&C'S MOTION FOR ATTORNEY'S FEES AND COSTS

Prior to trial, the parties submitted a joint stipulation confirming their agreement to have Defendant G&C's claim for "attorneys' fees and costs pursuant to the Subcontract between G&C and . . . Colorado Custom . . . , and the amount of such attorneys' fees and costs (if necessary), . . . determined via motion practice following trial." (ECF No. 82.)

Defendant G&C now moves post-trial for more than $700,000.00 in attorney's fees and

costs,[8] arguing that the jury's determination that Colorado Custom breached the subcontract entitles G&C to fees and costs thereunder, even if G&C was awarded only $1.00 in nominal damages.  (ECF No. 161-1 at 8-12.)  In opposition, Plaintiff argues that G&C "failed to carry its initial burden of demonstrating the reasonableness of its fees and costs."  (ECF No. 167 at 8-9.) Plaintiff also argues that even if G&C is a "prevailing party" entitled to fees under the subcontract, any award would be unreasonable based on "the $588,999.00 net loss G&C incurred in this action." (*Id.* at 9-10.)

Rule 54(d)(2) sets forth that "attorney's fees must be sought by motion or proven at trial." *Ewing v. Hillstone Rest. Grp.*, Civ. No. 21-13812, 2023 WL 1470185, at *4 (D.N.J. Feb. 2, 2023). Indeed, a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Fed. R. Civ. P. 54(d)(2)(A).  And because "attorney's fees are a question of substantive law, . . . state law applies in a diversity case," as here.  *Credit One Bank, N.A. v. Lieberman*, 2023 WL 4014471, at *3 (3d Cir. June 15, 2023); *see also Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995) ("Generally, the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of substantive state law.").

Under New Jersey's choice-of-law rules,[9] "a court sitting in New Jersey is required to apply New Jersey rules to procedural matters even where those same rules require the application of the

---

[8]    G&C initially indicated that it sought about $719,000.00, but on reply, it wrote that it would withdraw its request for fees associated with the spoliation motion in the case but it also sought an additional amount for fees incurred in March 2024 that it excluded from its initial motion.  (ECF No. 161-1 at 17; ECF No. 177 at 20-21.)

[9]    *See Collins on behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017) ("In diversity cases such as this one, we look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause.").

substantive law of another state." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008). "The Supreme Court of New Jersey has made clear that an award of attorneys' fees is a procedural matter to which its court rules shall apply." *Id.* (citing *State v. Otis Elevator Co.*, 95 A.2d 715, 717 (N.J. 1953) ("From the outset in New Jersey, following English precedents, the allowance of costs and counsel fees had been uniformly considered by the courts of this State to be a matter of procedure rather than of substantive law.")); *see also N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 730 A.2d 843, 848 (N.J 1999) ("[B]ecause the award of attorneys' fees and interest is a procedural rather than a substantive law issue, we conclude that the correct choice of law is New Jersey law."). "This rule applies even in the face of a contractual choice-of-law provision that selects another state's law." *Credit One Bank, N.A.*, 2023 WL 4014471, at *3.

New Jersey follows the "'American Rule,' which provides that litigants must bear the cost of their own attorneys' fees." *Innes v. Marzano-Lesnevich*, 136 A.3d 108, 113 (N.J. 2016). Nevertheless, "a prevailing party can recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001); *see also Boyle v. Huff*, 314 A.3d 793, 799 n.1 (N.J. 2024) ("Certain statutes and court rules create exceptions to the American Rule, and parties to a contract may provide for an award of attorneys' fees provided they do so through 'express contractual language.'" (quoting *Kieffer v. Best Buy*, 14 A.3d 737, 743 (N.J. 2011)).

Where a party seeks attorney's fees pursuant to a contractual provision, New Jersey law ordinarily holds that such fees are "an element of damages which must be proved in the same manner as any other item and which must be assessed by the finder of fact as a matter of right and in the actual amount established by the proofs." *Belfer v. Merling*, 730 A.2d 434, 443 (N.J. Super. Ct. App. Div. 1999); *see also Jamy Enterprises, LLC v. E & S Food Serv. Corp.*, Civ. No. 06-5667,

2009 WL 3271482, at *3 (D.N.J. Oct. 9, 2009) ("[U]nder New Jersey law, a claim for attorney's fees pursuant to a contractual arrangement is an element of damages that must be pleaded and proved during trial.").

Nonetheless, attorneys' fees may be appropriately awarded by the trial court where "the proceeding before the trial court dealt mainly with other substantive issues and only incidentally with the matter of counsel fee, an affidavit of services had been filed by the attorney for the plaintiffs, and the attorney for the defendants[] voiced no objection to this procedure." *Cohen v. Fair Lawn Dairies, Inc.*, 210 A.2d 73, 74 (N.J. 1965). "Under such circumstances," the New Jersey Supreme Court has held, "there would generally be no reason for requiring plenary proof, provided the record before the trial court, including the affidavit of services, is sufficiently complete to enable it to reach a fair determination as to the extent of the legal services rendered and the reasonable value to be paid pursuant to the contractual provision."[10] *Id.*; *see also Shafer v. United Gen. Title Ins. Co.*, Civ. No. 08-02884, 2010 WL 743983, at *1 n.2 (D.N.J. Mar. 3, 2010) (Debevoise, J.) (holding that it was unnecessary to submit the issue of attorneys' fees under the contract to a jury where "the contract at issue in th[e] case ha[d] already been interpreted" on summary judgment and the defendants' "entitlement to attorneys' fees and costs . . . proven").

The Third Circuit Court of Appeals has similarly approved certain types of damages being awarded by a district court upon agreement of the parties where the ordinary rule otherwise directed that the amount should be determined by a jury. *See, e.g.*, *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 512-13 (E.D. Pa. 2018) (noting that "the Third Circuit is clear that the actual amount

---

[10]     New Jersey precedent is clear that irrespective of the type of the attorneys' fee arrangement, the reasonableness is subject to judicial review. *See, e.g.*, *Belfer*, 730 A.2d at 443 ("[A]ny fee arrangement is subject to judicial review as to its reasonableness. . . . [E]xpenses can be scaled down by the court to reflect that the attorney's efforts were expended in part on warrantless claims.").

[of front pay] is to be determined by the jury" but has "upheld a district court's award of front pay where the issue was submitted to the court by the parties, separate from the trial" (citing *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 255 (3d Cir. 1986))).

Here, the Court finds it appropriate to decide Defendant G&C's post-trial motion for attorney's fees and costs. The parties stipulated to having the issue decided on motion by the Court following trial, neither party now objects to the Court ruling on the motion, the trial dealt with the substantive dispute over the parties' alleged breaches of the subcontract, and the record is "sufficiently complete to enable [the Court] to reach a fair determination as to the extent of the legal services rendered and the reasonable value to be paid pursuant to the contractual provision." *Cohen*, 210 A.2d at 74.

G&C seeks fees under the subcontract's section titled "default," which states that G&C is "entitled to recover from [Plaintiff] . . . all *reasonable* attorneys' fees suffered or incurred by [G&C] by reason or as a result of [Plaintiff's] default." (ECF No. 161-3 at 9 (emphasis added).) G&C's position is that because the jury found that Plaintiff breached the subcontract, it is reasonable for G&C to recover all, or almost all, of the attorney's fees and costs it incurred in the action, which totals more than $700,000.00. The Court disagrees. Even if the Court accepts that G&C is entitled to reasonable fees under the subcontract for any default by Plaintiff, the Court must still evaluate the reasonableness of an award. And after careful consideration, the Court finds that under the specific facts and circumstances of this case—particularly the jury's verdict that awarded Plaintiff $589,000.00 in damages and G&C only $1.00 (despite G&C seeking more than $1.3 million in damages) based on the parties' competing claims under the subcontract—the only reasonable attorney's fee award is no fee.

When determining a "reasonable" award of attorney's fees in each case, "there is no precise formula." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 429 (N.J. 2009). Yet the

overriding aim "is to approve a reasonable attorney's fee that is not excessive." *Id.* What is reasonable may vary depending on the circumstances, but a "court must consider the degree of success." *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *N. Bergen Rex Transp., Inc.*, 730 A.2d at 848 ("The threshold issue in determining whether an attorneys' fee award is reasonable is whether the party seeking the fee prevailed in the litigation."). For example, "when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success." *Litton*, 982 A.2d at 429. Similarly, "when the amount actually recovered is less than the attorney's fee request, the court must consider that fact in determining the overall reasonableness of the attorney's fee award." *Id.*

Courts have expressed caution when awarding attorney's fees where a party has obtained solely nominal damages and the case did not implicate issues of broad public importance. In *Farrar v. Hobby*, for instance, the plaintiffs asserted that their civil rights were violated and sought $17 million in damages stemming from an unlawful closure of a school. 506 U.S. 103, 106 (1992). The jury found that one defendant had deprived a plaintiff of a civil right, but it did not award damages. *Id.* at 106-07. The jury's verdict was found to constitute nominal damages, and the trial court then awarded $280,000.00 in attorney's fees plus expenses and pre-judgment interest. *Id.* at 107. Although the United States Supreme Court held that the nominal damages rendered the plaintiffs a "prevailing party," the Court determined that the "technical" nature of the victory meant that the plaintiffs were not entitled to any award. *Id.* at 112-14. The Court emphasized that the plaintiffs "received nominal damages instead of the $17 million in compensatory damages that they sought," and the "litigation accomplished little beyond giving [the plaintiffs] 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). In such a

scenario, the Court reasoned that a "court may lawfully award low or no fees without reciting the . . . factors bearing on reasonableness." *Id.* at 115.

Since *Farrar*, courts in New Jersey and elsewhere have applied similar logic to hold that a trial court has the discretion to award no fees or substantially reduce the fees requested where a party obtains merely nominal damages on a claim, including in cases outside the civil rights context. *See, e.g.*, *Tarr v. Ciasulli*, 853 A.2d 921, 930-31 (N.J. 2004) ("In the case of a nominal damages award, however, we leave to the discretion of the trial court whether to award minimal attorney's fees or no fees at all."); *Velius v. Twp. of Hamilton*, 466 F. App'x 133, 141 (3d Cir. 2012) ("The only requirement that remains intact for awarding attorneys' fees in nominal damages cases is that if the court decides to award something other than no fee or a low fee, it must conduct a lodestar analysis."); *see also Window Specialists, Inc. v. Forney Enterprises, Inc.*, 109 F. Supp. 3d 213, 219 (D.D.C. 2015) ("The Court found that WSI breached the Subcontract and awarded FEI nominal damages of $1.00. Despite the fact that FEI prevailed, it is not entitled to recover attorney fees."); *FCE Benefit Adm'rs, Inc. v. George Washington Univ.*, 209 F. Supp. 2d 232, 245 (D.D.C. 2002) ("Plaintiff sought $1,686,624 in damages for the breach of the contract . . . , but was awarded only one dollar. . . . Given the limited and technical nature of plaintiff's success, . . . the only reasonable fee is no fee."); *Labware, Inc. v. Thermo Labsystems, Inc.*, Civ. No. 04-2545, 2005 WL 1541028, at *13 n.7 (E.D. Pa. June 29, 2005) (noting that the plaintiff would likely not be entitled to attorney's fees where it was awarded nominal damages on breach-of-contract claim).

The cases that G&C cites to justify its requested fees are readily distinguishable. In *Allia v. Target Corp.*, for instance, the district court found that the defendant-corporation was entitled to reasonable attorney's fees under a confidentiality agreement where the plaintiff-employee breached the employment agreement by repeatedly disclosing the defendant's confidential and privileged information during the litigation. Civ. No. 07-4130, 2010 WL 1050043, at *15 (D.N.J.

Mar. 17, 2010). There, the court dismissed the plaintiff's claims of discrimination on summary judgment, granted the defendant injunctive relief, and emphasized that "the fees must be reasonable," directing the defendant to submit an affidavit of services. *Id.* Here, in comparison, Plaintiff prevailed on its contract claim against G&C, Plaintiff was awarded far more in damages than G&C, G&C received only $1.00 despite seeking more than $1.3 million, and G&C did not obtain injunctive relief against Plaintiff or otherwise prevail in a manner that altered the parties' relationship in G&C's favor.

The other cases cited by G&C are similarly distinguishable or do not persuade the Court that the fees requested here are reasonable. *See, e.g.*, *Crown Wisteria, Inc. v. Cibani*, 2022 WL 4316485, at *6 (N.Y. Sup. Ct. Sep. 16, 2022) (reducing requested attorney's fee award from $307,550.89 to $30,000.00 where "after years of protracted litigation, . . . [the plaintiff] demonstrated no economic harm at trial and recovered only nominal damages of $10 for . . . breach of the License Agreement"); *Viking Grp., Inc. v. Bruckman*, 2020 WL 2296903, at *6 (Mich. Ct. App. May 7, 2020) (affirming an award of attorney's fees where the plaintiff "took the necessary steps to fully enforce the terms of the Confidentiality Agreement and safeguard its manufacturing schematics, financial data, and the like" and the defendant was found to have "prolonged th[e] litigation by being less than forthcoming during the discovery process" and his "'pride and dignity' caused him to dig in his heels and continue th[e] dispute to the bitter end"); *Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.*, Civ. No. 06-3177, 2012 WL 1247103, at *6-8 (D. Md. Apr. 12, 2012), *amended*, 2012 WL 4324881 (D. Md. Sept. 18, 2012) (reducing requested fee award of $251,493.50 to $25,000.00 where the plaintiffs "prevailed on less than one-seventh of the total number of counts in their second amended complaint" and failed "to prove measurable damages").

Ultimately, although G&C may meet the technical definition for a prevailing party, the jury's verdict in this case of $1.00 was no more than a "moral victory" for G&C under the

subcontract.  *See Farrar*, 506 U.S. at 114.  While the jury found that both parties had breached the subcontract, the jury rejected G&C's theory of damages and awarded it just $1.00 in nominal damages, indicating that the jury did not find that G&C was entitled to recover any costs associated with replacing Plaintiff on the project.  In contrast, the jury awarded Plaintiff $589,000.00 in general damages, a significant portion of what Plaintiff alleged to have incurred on the project. Therefore, even if G&C "prevailed" in one sense, the jury's damages award in favor of Plaintiff (and no other relief awarded in favor of G&C) weighs heavily here against the fees G&C seeks. *See, e.g.*, *Warren Distrib. Co. v. InBev USA, LLC*, Civ. No. 07-1053, 2011 WL 770005, at *20 (D.N.J. Feb. 28, 2011) ("[A]side from the inconsequential sum they received in damages (.05 percent of the amount requested), there is little evidence that Plaintiffs succeeded on *any* important issue in this litigation.  Therefore, because the overall outcome of this litigation heavily favors Defendants, the Court will reduce Plaintiffs' counsel fees award by one hundred percent."). Accordingly, the Court finds that the only reasonable attorney's fee award in this case is no fee.

### C.  PLAINTIFF'S MOTION FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

Finally, Plaintiff moves to amend the judgment under Rule 59(e) to include pre-judgment and post-judgment interest.[11]  (ECF No. 162-2.)  Plaintiff argues that an award of pre-judgment interest "will 'compensate [Colorado Custom] for [its] lost use of the money during the pendency of this litigation.'"  (*Id.* at 5-9 (quoting *Kerns v. Logicworks Sys. Corp.*, Civ. No. 12-04146, 2015 WL 4548733, at *2 (D.N.J. July 28, 2015)).)  Plaintiff seeks $92,860.13 in pre-judgment interest accruing from May 16, 2019, the date Colorado Custom was discharged from the project, until March 13, 2024, when the Court entered judgment.  (*Id.* at 8-9.)  Plaintiff also argues that an award of post-judgment interest is mandatory under 28 U.S.C. § 1961, and the Court should award post-

---

[11]    *Am. Nat'l Prop. & Cas. Co.*, 399 F. Supp. 3d at 339 ("Post-judgment motions for interest can also be raised under Rule 59(e).").

judgment interest accruing from March 13, 2024, until the date of payment. (*Id.* at 9-11.) In opposition, Defendants do not contest Plaintiff's entitlement to post-judgment interest under 28 U.S.C. § 1961. (*See generally* ECF No. 166-1.) Defendants argue, however, that pre-judgment interest is discretionary, and considering the equitable factors, Plaintiffs should not be awarded pre-judgment interest by the Court. (*Id.* at 7-22.)

### 1. PRE-JUDGMENT INTEREST

Because pre-judgment interest is a procedural question of law and no federal law or rule governs the issue, the law of the forum—New Jersey law—applies here. *See Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 203-04 (3d Cir. 2007) ("[T]he award of prejudgment interest is governed by New Jersey law. Federal courts sitting in diversity must apply state law with respect to prejudgment interest. Although the parties agreed to be bound by Minnesota law, the law of the forum state—in this case, New Jersey—applies to questions of process, of which the award of interest is one." (citations omitted)); *Int'l Transp. Mgmt. Corp. v. Brooks Fitch Apparel Grp., LLC*, Civ. No. 11-1921, 2020 WL 5525510, at *2 (D.N.J. Sept. 14, 2020) ("[A]s a federal court sitting in diversity jurisdiction, this Court must apply the forum state's choice-of-law rules, and New Jersey choice-of-law rules dictate that New Jersey prejudgment interest law applies even if another state's law ultimately governed the substantive issues at trial." (citations omitted)).

Under New Jersey law, "the award of prejudgment interest on contract and equitable claims is based on equitable principles," and the "allowance of prejudgment interest is a matter of discretion for the trial court." *Cnty. of Essex v. First Union Nat. Bank*, 891 A.2d 600, 608 (N.J. 2006). "Unless the award 'represents a manifest denial of justice,' an appellate court should not interfere." *Id.* at 609 (quoting *Musto v. Vidas*, 754 A.2d 586, 598 (N.J. Super. Ct. App. Div. 2000)). In deciding whether to award pre-judgment interest,

> [t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.
>
> [*Id.* at 608 (quoting *Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.*, 323 A.2d 495, 512 (N.J. 1974)).]

Pre-judgment interest is not intended to "be imposed as a punitive measure" but to compensate the prevailing party for "lost use of . . . money during the pendency of th[e] litigation." *Kerns*, 2015 WL 4548733, at *2; *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 102 (3d Cir. 2012) ("Prejudgment interest exists to make plaintiffs whole and to preclude defendants from garnering unjust enrichment.").

Here, Defendants raise several objections to an award of pre-judgment interest. After careful review, the Court is unpersuaded by the objections, and the Court finds that Plaintiff Colorado Custom is entitled to pre-judgment interest on the $588,999.00 net award of damages it obtained at trial.

*First*, Defendants argue that the decision to award pre-judgment interest should be governed solely by the subcontract, which does not provide for pre-judgment interest as an element of Plaintiff's damages. (ECF No. 166-1 at 8-10.) But as Plaintiff notes, New Jersey's courts have held that "a plaintiff is not disentitled to prejudgment interest if there is nothing in the contract providing for it" and then "win[s] a lawsuit for earned payments never made." *AGS Computers, Inc. v. Bear, Stearns & Co.*, 581 A.2d 508, 509 (N.J. Super. Ct. App. Div. 1990). Indeed, "when the matter of prejudgment interest is not addressed in the contract, or the applicable rate does not appear in the contract, '[t]he matter of prejudgment interest in contract cases is left to the sound

discretion of the trial court.'"[12]  *Red House Cap. LLC v. Nirvana Pool & Spa LLC*, Civ. No. 09-5618, 2012 WL 253128, at *1 n.1 (D.N.J. Jan. 25, 2012) (quoting *Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 642 (D.N.J. 1998)).

*Second*, Defendants argue that pre-judgment interest would be inequitable because they had a "good faith" basis to withhold payment to Plaintiff, as evidenced by the jury finding that Plaintiff had breached the subcontract.  (ECF No. 166-1 at 10-12.)  But "the existence of a legitimate difference of opinion on the issue of liability is merely a characteristic of most ordinary lawsuits.  It is not an extraordinary circumstance that can justify denying prejudgment interest." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 198 (1995); *see also Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.*, 323 A.2d 495, 512 (N.J. 1974) ("[P]rejudgment interest on a claim, the amount of which is ascertained, is not avoided by honest disputation over legal liability."); *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, 999 F. Supp. 2d 690, 759 (D.N.J. 2014), *aff'd*, 601 F. App'x 122 (3d Cir. 2015) ("Courts in this district, applying New Jersey law, award prejudgment interest for breach of contract where, as here, the plaintiff 'was deprived of funds without receiving that which was promised in return.'  Indeed, prejudgment interest should . . . [not] be withheld due to the unsuccessful party's 'honest disputation over legal liability.'" (citations omitted)).

*Third*, Defendants argue that the jury already considered post-judgment interest in its damages award because a provision in the subcontract provided that Plaintiff would be entitled to

---

[12]      Defendants cite *Interstate Realty Management Co. v. PF Holdings, LLC*, Civ. No. 16-4095, 2017 WL 53707, at *3 (D.N.J. Jan. 4, 2017), for the proposition that "no pre-judgment interest will be awarded" when not provided for "in the contract itself," but as the district court later explained, that proposition in *Interstate Realty* was "not supported with a citation," and there is no "New Jersey precedent to support this proposition." *Air Express Int'l v. LOG-NET, Inc.*, Civ. No. 12-1732, 2019 WL 1441195, at *17 (D.N.J. Mar. 31, 2019).  The proposition is also "at odds with the purpose of prejudgment interest." *Id.* (citation omitted).

an additional ten percent in damages on top of its direct costs for labor and material if G&C terminated Plaintiff for convenience and not for cause.  (ECF No. 166-1 at 16-17.)  The ten percent damages provision in the subcontract is nowhere defined to include pre-judgment interest, and it was not presented to the jury as such.  The Court also did not instruct the jury on pre-judgment interest; the jury instructions only discussed the award of general and nominal damages. Accordingly, the Court sees no basis to deny pre-judgment interest on this ground.

*Fourth*, Defendants argue that no pre-judgment interest should be charged for labor and costs that were not billed to G&C prior to Colorado Custom's termination as subcontractor on the Pike's Peak project.  (ECF No. 166-1 at 15.)  But as the Court noted above, there is sufficient evidence in the record to support the verdict that Plaintiff suffered damages for labor and storage of materials at the administration building that it had not yet had an opportunity to bill due to it being terminated from the project by G&C.

*Fifth*, and finally, Defendants argue that pre-judgment interest should not be awarded for periods of delay in the litigation due to either discovery extensions stemming from the COVID-19 pandemic or while motions were pending, namely, Plaintiff's motion for spoliation sanctions against G&C, upon which Plaintiff prevailed.  (ECF No. 166-1 at 18-20.)  Other courts have rejected the same argument that litigation delays associated with the COVID-19 pandemic should be deemed to rise to the level of an "exceptional" circumstance warranting the suspension of pre-judgment interest, and this Court agrees.  "While the COVID-19 pandemic was certainly an unprecedented and disruptive event that delayed litigation in this district and throughout the country," a suspension of pre-judgment interest on this basis would be inequitable here because it "would unfairly reduce the true value of . . . recovery of the money that" Defendants retained and that Plaintiff Colorado Custom would have been "able to invest and earn a return on."  *Freedom Mortg. Corp. v. LoanCare, LLC*, Civ. No. 16-02569, 2024 WL 3226942, at *6 (D.N.J. June 27,

2024); *see also Robert D. Borteck, PC v. Kennedy*, 2024 WL 220747, at *6 (N.J. Super. Ct. App. Div. Jan. 22, 2024) ("The [New Jersey] Supreme Court did not suspend the operation of Rule 4:42-11(b) governing prejudgment interest during the pandemic.  Moreover, defendants knew how much they owed plaintiff because they received invoices and had not paid plaintiff for years.  The circumstances do not convince us it would be just to deprive plaintiff of the interest on money defendants clearly owed.").

Moreover, the parties contracted to have the case litigated in this District, and the delays for motions to be decided were not so "exceptional" as to warrant suspending the accumulation of pre-judgment interest.  *See, e.g.*, *W.R. Huff Asset Mgmt. Co. v. William Soroka 1989 Tr.*, Civ. No. 04-3093, 2009 WL 2436692, at *9 (D.N.J. Aug. 6, 2009) ("The 'delay' in this case is not so extraordinary that prejudgment interest should be denied while the Court's disposition was pending.").  Notably, Defendants themselves sought extensions in this case.  (*See* ECF Nos. 94, 117, 121.)

Having found that Plaintiff Colorado Custom is entitled to pre-judgment interest on the jury award, the Court must determine the appropriate accrual date as well as the rate of interest. In contract cases, a district court, in its discretion, is tasked with determining an appropriate rate of interest and the date from which interest begins to run based on equitable principles.  *See Cnty. of Essex*, 891 A.2d at 609; *Amba v. Rupari Food Servs., Inc.*, Civ. No. 10-4603, 2016 WL 6471019, at *3 (D.N.J. Oct. 31, 2016) ("[I]t is within the discretion of the Court to determine 'the rate at which prejudgment interest is calculated.'  Finally, in contract cases, the trial court has discretion to determine the date on which prejudgment interest starts to accrue."  (citations omitted)); *Izzo v. Izzo*, 2008 WL 482406, at *10 (N.J. Super. Ct. App. Div. Feb. 20, 2008) (same).

When determining the rate of interest, courts have at times looked for guidance to New Jersey Court Rule 4:42-11(b), which applies to tort actions.  *See, e.g.*, *Pharmscript, LLC v. Focus*

*Rehab. & Nursing Ctr. at Utica*, Civ. No. 21-11047, 2022 WL 714761, at *4 (D.N.J. Mar. 9, 2022) ("Although N.J. Court Rule 4:42-11(b) applies only to the Judgment Interest Rate for tort actions, it has been occasionally applied to contract actions as a matter of equity."). Courts have emphasized that "[a]bsent unusual circumstances, . . . trial courts should refer to N.J. Ct. R. 4:42-11(b) when determining the rate of pre-judgment interest to be awarded." *Napp Techs., L.L.C. v. Kiel Lab'ys, Inc.*, Civ. No. 04-3535, 2008 WL 5233708, at *9 (D.N.J. Dec. 12, 2008); *Hang Hing Loong Trading Co. Ltd. v. INCO Ltd. Liab. Co.*, Civ. No. 15-3614, 2017 WL 4697069, at *13 (D.N.J. Oct. 18, 2017) ("Generally, absent unusual circumstances, the prejudgment interest rate applied to contract claims is determined by the annual rate of return of the State of New Jersey Cash Management Fund, and shall not fall below 0.25%.").

Because there are no unusual circumstances present here, the Court will look to the pre-judgment interest rate at N.J. Ct. R. 4:42-11(b), which states that pre-judgment interest should be calculated in accordance with N.J. Ct. R. 4:42-11(a). New Jersey Court Rule 4:42-11(a)(ii) states that simple interest should be calculated at "the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury." N.J. Ct. R. 4:42-11(a)(ii). New Jersey Court Rule 4:42-11(a)(iii) further permits a court in a contract case, within its equitable discretion, to add an additional 2% to the Cash Management Fund's historical rate where, as here, the judgment exceeds the monetary limit of the Special Civil Part of $20,000.00.[13]  N.J. Ct. R. 4:42-11(a)(iii).

Based on its review, the Court will utilize the cash fund management rate for determining the pre-judgment interest rate annually in accordance with N.J. Ct. R. 4:42-11(a)(ii). The Court

---

[13]    *See* N.J. Ct. R. 6:1-2(a)(1) (stating that matters are cognizable in the Special Civil Part "when the amount in controversy does not exceed $20,000").

will not, however, add 2% to that rate under N.J. Ct. R. 4:42-11(a)(iii), because the Court does not find that the equities demand it.  Considering all the relevant factors, the Court finds on balance that in this contract case the cash fund management rate alone is an appropriate compromise that provides for what Plaintiff might have earned on the withheld monies while simultaneously preventing undue punishment.  *See, e.g.*, *Hang Hing Loong Trading Co. Ltd.*, 2017 WL 4697069, at *13 ("New Jersey courts have advised that in contract cases 'subsection (a)(ii) provides an appropriate starting point in determining the rate of prejudgment interest' and that (a)(iii)'s 2% increase is discretionary in 'unusual circumstances' based on equitable principles."  (quoting *DialAmerica Mktg., Inc. v. KeySpan Energy Corp.*, 865 A.2d 728, 734 (N.J. Super. Ct. App. Div. 2005))); *see also Mylan Inc. v. Smithkline Beecham Corp.*, Civ. No. 10-4809, 2014 WL 3519102, at *5 (D.N.J. July 16, 2014).

Finally, for the date of accrual, Plaintiff argues that the Court should in its discretion calculate the pre-judgment interest owed from May 16, 2019, the date that G&C terminated Plaintiff and was required to pay for labor and materials.  (ECF No. 176 at 14-15.)  Defendants argue that the date of accrual should be set at either February 24, 2020, the date that Defendants accepted service of the complaint, or December 31, 2019, when the complaint was initially filed in federal court.  (ECF No. 166-1 at 22.)  The Court will award "simple prejudgment interest to accrue from the date of the filing of the original complaint," December 31, 2019, until the Court entered the Judgment Order on March 13, 2024.  *In re Sakhe*, 656 B.R. 370, 404 (Bankr. D.N.J. 2023); *see also SMP Properties, LLC v. Encore Realty, LLC*, Civ. No. 20-6676, 2024 WL 1975502, at *6 (D.N.J. May 3, 2024) (calculating pre-judgment interest from the filing of the complaint).  The Court finds this, on balance, to be an appropriate compromise between the parties' positions and not unduly punitive.  Accordingly, pre-judgment interest will be awarded to Plaintiff Colorado Custom in the amount of $30,595.74, as calculated in the table below.

| Year | Annual Cash Management Fund Rate[14] | Judgment | Per Diem | Days | Pre-Judgment Interest Owed |
|------|------|------|------|------|------|
| 2019 | 1.50% | $588,999.00 | $24.21 | 1 | $24.21 |
| 2020 | 2.50% | $588,999.00 | | | $14,724.98 |
| 2021 | 1.50% | $588,999.00 | | | $8,834.99 |
| 2022 | .25% | $588,999.00 | | | $1,472.50 |
| 2023 | .25% | $588,999.00 | | | $1,472.50 |
| 2024 | 3.50% | $588,999.00 | $56.48 | 72 | $4,066.56 |
| | | | | **Total** | **$30,595.74** |

### 2. POST-JUDGMENT INTEREST

Post-judgment interest is governed by 28 U.S.C. § 1961, "even in matters arising under diversity jurisdiction." *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 8878129, at *2 (D.N.J. Dec. 22, 2023) (quoting *USI Int'l Inc. v. Festo Didactic Inc.*, Civ. No. 15-8451, 2023 WL 3996360, at *4 (D.N.J. June 14, 2023)). Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Post-judgment interest is thus mandatory. *See Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir. 1993) ("Section 1961 dictates that interest be awarded.").

Post-judgment interest is calculated beginning on the day when a "money judgment" is entered. 28 U.S.C. § 1961(a) ("Such interest shall be calculated from the date of the entry of the judgment."); *see also Freedom Mortg. Corp.*, 2024 WL 3226942, at *8. A "money judgment" must include "(1) an identification of the parties for and against whom judgment is being entered;

---

[14]    *See* WEBSITE OF THE NEW JERSEY COURTS, "Post-Judgment and Pre-Judgment Interest Rates," available at www.njcourts.gov/sites/default/files/courts/civil/postprejudgmentrates.pdf (last accessed on Sept. 3, 2024).

and (2) a definite and certain designation of the amount which plaintiff is owed by defendant." *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001) (emphasis removed) (quoting *Penn Terra Ltd. v. Dep't of Env't Res., Com. of Pa.*, 733 F.2d 267, 275 (3d Cir. 1984)).   And under section 1961, the interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."   § 1961(a) (cleaned up).   The interest must "be computed daily to the date of payment . . . and . . . compounded annually."   § 1961(b).

Here, the Court will award post-judgment interest on the $588,999.00 money judgment that Colorado Custom obtained in the March 13, 2024 Judgment Order.   According to Colorado Custom, the applicable rate of post-judgment interest for the calendar week preceding the Judgment Order (the week of March 8, 2024), is 4.94%.   (ECF No. 162-2 at 10 (citing Selected Interest Rates (Daily), Bd. of Governors of the Fed. Reserve Sys., https://www.federalreserve.gov/releases/h1).)   Defendants do not contest this rate, and it will be utilized by the Court.   This amounts to $79.50 in post-judgment interest each day on the $588,999.00 money judgment running from March 13, 2024.

The Court will also award post-judgment interest on the pre-judgment interest award of $30,595.74.   *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 157 (3d Cir. 2010) (affirming the district court's award of post-judgment interest on pre-judgment interest and noting that an award of post-judgment interest is governed by 28 U.S.C. § 1961(a)).   This post-judgment interest will accrue starting upon the entry of the Amended Judgment Order.   *See id.* at 175 ("[P]ost-judgment interest on a particular award only starts running when a judgment quantifying that award has been entered.").   The Court will direct the parties to confer and to submit a joint stipulation confirming the post-judgment interest rate that should apply under 28 U.S.C. § 1961 to

the pre-judgment interest award based on the calendar week preceding the Amended Judgment Order.  *See Int'l Transp. Mgmt. Corp.*, 2020 WL 5525510, at \*5.

**III.**   **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendants' motion for judgment as a matter of law/to alter or amend the judgment/for a new trial is **DENIED**, Defendant G&C's motion for attorney's fees and costs is **DENIED**, Plaintiff's motion for pre-judgment and post-judgment interest is **GRANTED** in part and **DENIED** in part, and Defendants' emergent motion for a stay of execution of the Court's March 13, 2024 Judgment is **DENIED** as moot.  An appropriate Order follows.


Dated:  October 1st, 2024

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**